**ORIGINAL**

1

| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| 2 | FOR THE DISTRICT OF HAWAII |

3   UNITED STATES OF AMERICA,    )   CR. NO. 05-00367 DAE
                                 )
4               Plaintiff,       )   THURSDAY, NOVEMBER 16, 2006
                                 )
5        vs.                     )
                                 )       FILED IN THE
6   (01) MARIA D. BARNES,        )   UNITED STATES DISTRICT COURT
                                 )       DISTRICT OF HAWAII
7               Defendant.       )
                                 )       JUN 26 2008
8   ─────────────────────────────
                                     at 11 o'clock and 65 min. A M.
                                         SUE BEITIA, CLERK

9            MOTION FOR WITHDRAWAL OF NOT GUILTY PLEA
                AND TO PLEAD ANEW BEFORE THE HONORABLE
10       KEVIN S. C. CHANG, UNITED STATES MAGISTRATE JUDGE

11

12   APPEARANCES:

13   For Plaintiff:        JONATHAN M. F. LOO
                           Assistant U.S. Attorney
14                         Office of the U.S. Attorney
                           Prince Kuhio Federal Building
15                         300 Ala Moana Boulevard, Suite 6100
                           Honolulu, HI  96850
16

17   For Defendant:        ARTHUR E. ROSS
                           Law Office of Arthur E. Ross
18                         841 Bishop Street, Suite 2115
                           Honolulu, HI  96813
19

20

21

22

23

24

25   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.

1            THE CLERK:  This Honorable Court is now in

2    session.  Criminal number 05-367 DAE, *United States of*

3    *America vs. Defendant (1) Maria Barnes*.  This case has been

4    called for a hearing on a Motion for Withdrawal of Not

5    Guilty Plea and to Plead Anew.

6            May I have your appearances?

7            MR. LOO:  Good afternoon, Your Honor.  Jonathan

8    Loo for the United States.  With me at counsel table is John

9    Manager (phonetic) with IRSCO (phonetic).

10            THE COURT:  Good afternoon.

11            MR. ROSS:  Good afternoon, Your Honor.  Art Ross

12    present with Maria Barnes.

13            THE COURT:  Good afternoon, Ms. Barnes.

14            THE DEFENDANT:  Good afternoon, Your Honor.

15            THE COURT:  Is it your intention this afternoon,

16    Ms. Barnes, to plead guilty to Count 1 of the Indictment?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  Before I can accept your guilty plea,

19    I must know that you understand what you're doing; that

20    you're pleading guilty freely and voluntarily; that there is

21    a factual basis for your change of plea and that the ends of

22    justice would be met to allow you to enter such a plea.

23            To make these determinations, I'm going to ask

24    you some questions.  If you do not understand any of the

25    words or the questions, will you please say so?

1             THE DEFENDANT:  I will, Your Honor.

2             THE COURT:  All right.  Would you administer the

3    oath?

4             THE CLERK:  Please raise your right hand.

5             (DEFENDANT MARIA BARNS SWORN.)

6             THE COURT:  Ms. Barnes, what is your full name.

7             THE DEFENDANT:  My full name is Maria Barnes, but

8    I was also known as Maria Barnes Pacarro.

9             THE COURT:  And how old are you.

10            THE DEFENDANT:  I am now sixty-six years old.

11            THE COURT:  And how far did you go in school.

12            THE DEFENDANT:  Oh, I am a college graduate and I

13   have two degrees.

14            THE COURT:  Ms. Barnes, have you taken any

15   medication, alcohol or drugs of any kind today.

16            THE DEFENDANT:  No, sir.

17            THE COURT:  Do you feel well and alert?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Do you understand what is going on.

20            THE DEFENDANT:  Yes.

21            THE COURT:  Have you been treated recently for

22   any mental illness or addiction to narcotic drugs of any

23   kind.

24            THE DEFENDANT:  No.  The only medicine I take is

25   the ones prescribed by my psychiatrist.

1          THE COURT:  And are you still taking that

2  medication today?

3          THE DEFENDANT:  I didn't take it today.

4          THE COURT:  Okay.  The medication that you do

5  take, does it in any way affect your ability to comprehend

6  or understand the proceedings this afternoon?

7          THE DEFENDANT:  I don't think so.

8          THE COURT:  Okay.  Mr. Ross, to the best of your

9  knowledge, is the Defendant fully competent to enter a valid

10  plea today?

11          MR. ROSS:  I think she is.  She had an asthma --

12  asthmatic attack last night and this morning but she's been

13  to a doctor since and he gave her some injection and

14  (inaudible) or something.  But I think she's competent.

15          THE COURT:  Okay.  Ms. Barnes, if you choose to

16  enter a guilty plea in this case, you have the right to

17  enter that plea before a United States District Judge.

18          If you consent, however, you may enter your

19  guilty plea before me, a United States Magistrate Judge.  If

20  you enter a guilty plea here today, Judge Ezra would impose

21  sentence at a later hearing.

22          Do you understand that?

23          THE DEFENDANT:  I do.

24          THE COURT:  All right.  The Court does find the

25  Defendant is fully competent and capable of entering an

1   informed plea.

2           Ms. Barnes, I have before me a document entitled

3   Consent to Rule 11 Plea in a Felony Case Before a United

4   States Magistrate Judge.  Did you sign this document?

5           THE DEFENDANT:  I did, sir.

6           THE COURT:  Is it your wish to consent to enter

7   your plea before me, a Magistrate Judge, and to give up or

8   waive your right to enter that plea before a United States

9   District Judge.

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Mr. Ross, have you discussed the

12  consent form with your client?

13          MR. ROSS:  Yes, I have, Your Honor.

14          THE COURT:  And are you satisfied that she

15  understands it.

16          MR. ROSS:  I am, sir.

17          THE COURT:  Have you also signed the document?

18          MR. ROSS:  I did, Your Honor.

19          THE COURT:  The Court finds that the Defendant

20  has consented to enter her plea before a United States

21  Magistrate Judge.

22          Ms. Barnes, have you received a copy of the

23  Indictment pending against you that is the written charge

24  made against you in this case.

25          THE DEFENDANT:  Yes, I have.

1              THE COURT:  Have you discussed the charges and

2     all of the facts surrounding the charges with Mr. Ross, your

3     attorney.

4              THE DEFENDANT:  Yes, I have.

5              THE COURT:  Are you fully satisfied with the

6     legal representation that you've received from Mr. Ross,

7     your attorney.

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Mr. Ross, is the Defendant's guilty

10    plea before the Court today pursuant to your advice and

11    recommendation?

12             MR. ROSS:  Yes, Your Honor.

13             THE COURT:  Ms. Barnes, the Court's been

14    furnished with a written plea agreement.  Is this your

15    signature on the last page?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Did you have an opportunity to read

18    and discuss the plea agreement with your lawyer before you

19    signed it?

20             THE DEFENDANT:  I did yesterday.

21             THE COURT:  Do you understand the terms of the

22    plea agreement?

23             THE DEFENDANT:  I do.

24             THE COURT:  Does the plea agreement cover every

25    aspect of the agreement that you have with the Government in

1   this case.

2           THE DEFENDANT:  Yes, sir.

3           THE COURT:  Has anyone made any other or

4   different promise or assurance of any kind to you in an

5   effort to get you to plead guilty?

6           THE DEFENDANT:  Could you please rephrase the

7   question?

8           THE COURT:  Sure.  Other than what's contained in

9   the written plea agreement --

10          THE DEFENDANT:  Um hm.

11          THE COURT:  -- has anyone made any other or

12  different promise to you in an effort to get you to plead

13  guilty?

14          THE DEFENDANT:  I don't think so.

15          THE COURT:  Is there any doubt in your mind?

16          THE DEFENDANT:  No.

17          THE COURT:  Do you have any basis to believe that

18  there may be other promises or consideration other than what

19  -- except as for what's contained in the plea agreement?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  All right.  Has anyone attempted to

22  force you to plead guilty or to pressure you or threaten you

23  in any way?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  Mr. Loo, would you summarize the

1    major terms of the plea agreement?

2              MR. LOO:  Yes, Your Honor.  The Defendant has

3    agreed to plead guilty to Count 1 of the Indictment which

4    charges her in a conspiracy to commit money laundering.

5              That offense is punishable by up to twenty years

6    imprisonment, a fine of up to five hundred thousand dollars

7    or twice the value of the laundered funds.

8              She's also subject to a term of supervised

9    release of not more than five years and a hundred dollar

10   special assessment.

11             Time of sentencing the United States agrees to

12   dismiss the remaining counts of the Indictment against the

13   Defendant.

14             The United States has agreed that she otherwise

15   qualifies for acceptance of responsibility that her plea is

16   timely and that she be entitled to the third level under

17   3E1.1.

18             There is an appeal waiver provision in the plea

19   agreement and the Defendant has agreed to waive her right to

20   file an appeal and/or a *habeus corpus* petition except under

21   two exceptions, and that is if the sentence imposed is

22   greater than the applicable guideline sentence -- in other

23   words, if there's an upper departure or if the sentence

24   imposed is an illegal sentence.

25             The Defendant has also agreed to cooperate with

1    the United States, to appear when requested and to provide

2    truthful and complete information in the course of her

3    cooperation.

4         The United States has also agreed to consider her

5    cooperation and if it rises to the level of substantial

6    assistance to make a motion before the -- appropriate motion

7    before the Court to have her sentence reduced either

8    pursuant to Section 5K1.1. of the Guidelines and/or Section

9    3553(e) of Title 18, United States Code.

10        And those are the essential terms of the plea

11   agreement, Your Honor.

12        THE COURT:  Ms. Barnes, does that accurately

13   state your agreement with the Government?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  Do you understand that you are

16   waiving or giving up all of your rights to appeal except for

17   two situations:  first, if Judge Ezra imposes a sentence

18   above the advisory sentencing guidelines, and second, in the

19   event of ineffective assistance of counsel?

20        THE DEFENDANT:  Yes, Your Honor.

21        THE COURT:  Do you fully understand the charges

22   covered by the plea agreement?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  Mr. Loo, what are the maximum

25   possible penalties for Count 1 of the Indictment?

1          MR. LOO:  It's a term of imprisonment of up to

2    twenty years, Your Honor, a fine of up to five hundred

3    thousand dollars or twice the value of the laundered

4    proceeds, a term of supervised release of not more than five

5    years and a special assessment of a hundred dollars.

6          THE COURT:  Mr. Ross, do you agree with that

7    summary as to the possible penalties?

8          MR. ROSS:  Yes, Your Honor.

9          THE COURT:  Ms. Barnes, do you understand that

10   these are the possible penalties you face if you enter a

11   guilty plea to the charge in this case?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  During the period of supervised

14   release, you must comply with a set of conditions which will

15   be explained to you by a probation officer.  Those

16   conditions will include requirements that you obey the law;

17   that you report as required to the probation officer and

18   other conditions.

19         If the Court finds that you've violated any of

20   those conditions you could be required to serve additional

21   prison time.

22         Do you understand that?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Are you presently on probation,

25   parole or supervised release from any other case.

1        THE DEFENDANT:  No.

2        THE COURT:  Mr. Loo, does the United States

3    contend that any felony offense to which the Defendant is

4    today pleading guilty occurred while she was released on

5    bond in relation to some other federal criminal charge.

6        MR. LOO:  No, Your Honor.

7        THE COURT:  Does this case involve possible

8    restitution or forfeiture, Mr. Loo?

9        MR. LOO:  No, Your Honor.

10        THE COURT:  Ms. Barnes, if you are convicted of

11    the charge in this case you may lose valuable civil rights

12    including the right to vote, the right to hold public

13    office, the right to serve on a jury, and the right to

14    possess any kind of a firearm.

15        Do you understand that.

16        THE DEFENDANT:  Yes.

17        THE COURT:  The United States Sentencing

18    Commission has issued guidelines for judges to use in

19    determining the sentence in a criminal case.  While judges

20    are not bound to apply the guidelines, judges must consult

21    the guidelines and take them into account in determining of

22    sentence.

23        Ms. Barnes, have you and your attorney talked

24    about how the guidelines might apply to your case.

25        THE DEFENDANT:  Yes, sir.

1          THE COURT:  Do you understand that the Court will

2   not be able to determine the advisory guideline sentence for

3   your case until after the pre-sentence report has been

4   completed and you and the Government have had an opportunity

5   to challenge the reported facts and the application of the

6   guidelines recommended by the probation officer, and that

7   the sentence imposed may be different from any estimate your

8   attorney may have given you?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Do you also understand that after

11   advisory guideline range has been determined, the Court has

12   the discretion and authority to depart from the guidelines

13   and to impose a sentence that is more severe or less severe

14   than the sentence indicated in the advisory sentencing

15   guideline range?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Do you understand that Judge Ezra

18   will also determine your sentence based on admissions that

19   you make at this change of plea hearing?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you understand that you do not

22   have to admit to factual matters in dispute, but if you do

23   admit to certain facts at this hearing, Judge Ezra will rely

24   on your admissions at the time of sentencing and that your

25   admissions may increase your sentence?

1          MR. ROSS:  What admissions are you talking about,

2    sir.

3          THE COURT:  To the extent, for example, Mr. Ross,

4    I'm going to ask Ms. Barnes for her to tell me what she did

5    that constitutes the crime charged in this case.

6          MR. ROSS:  I have no problem with that.

7          THE COURT:  Ms. Barnes, let me put the question

8    to you again.

9          Do you understand that you do not have to admit

10    to factual matters in dispute, but if you do admit to

11    certain facts at this hearing, Judge Ezra will rely on your

12    admissions at the time of sentencing and that your

13    admissions may increase your sentence?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  If the sentence is more severe than

16    you expected, you will still be bound by your plea.  Even if

17    you do not like the sentence imposed by the Court, you will

18    not be able to withdraw your plea.  The time to make that

19    decision is now.

20          Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Ms. Barnes, parole has been

23    abolished.  If you are sentenced to prison, you will not be

24    released on parole.

25          Do you understand that?

1          THE DEFENDANT:  I believe so.  Can you rephrase

2    it?

3          THE COURT:  If you're sentenced to prison --

4          THE DEFENDANT:  Um hm.

5          THE COURT:  -- you will not be released on

6    parole.  Do you understand that.

7          THE DEFENDANT:  I do.

8          THE COURT:  Ms. Barnes, you have a right to plead

9    not guilty to any offense charged against you and to persist

10   in that plea.  You would then have a right to trial by jury.

11         During that trial, you would have the right to

12   assistance of counsel for your defense, the right to see and

13   hear all the witnesses and to have your attorney cross-

14   examine them, the right to testify yourself or to decline to

15   testify and remain silent, and the right to have the Court

16   issue subpoenas for any witnesses you wish to call in your

17   defense.

18         At trial, you would be presumed to be innocent

19   and the United States would have the burden of proving that

20   you are guilty beyond a reasonable doubt.  Before you can be

21   convicted, all twelve jurors must be convinced that the

22   Government has met that burden.

23         If you are found guilty after a trial, you would

24   have the right to appeal that conviction to a higher court,

25   and if you could not afford to pay the cost for the appeal,

1  the Government would pay those costs for you.

2        Do you understand that you have all of these

3  rights?

4        THE DEFENDANT:  Yes, Your Honor.

5        THE COURT:  If you plead guilty, however, and if

6  the Court accepts that plea, there will be no trial and you

7  will be waiving or giving up your right to trial and all of

8  the other rights I have described.

9        Do you understand that.

10        THE DEFENDANT:  I do.

11        THE COURT:  Also, so long as you plead not

12  guilty, you have the right to remain silent, but if you

13  plead guilty, you are waiving that right.

14        I will ask you some questions about what occurred

15  and you must answer those questions truthfully, under oath,

16  even if your answers establish that you've committed the

17  crime.

18        Do you understand that.

19        THE DEFENDANT:  Yes, sir.

20        THE COURT:  Mr. Loo, would you summarize for the

21  Court and the Defendant the essential elements which the

22  Government would be required to prove if there were a trial

23  on the charge.

24        MR. LOO:  Yes, Your Honor.  Had this case

25  proceeded to trial, the United States would have to prove --

1    and is prepared to prove beyond a reasonable doubt -- the

2    following elements.

3            That the Defendant combined or conspired with

4    others -- not Government agents -- to engage in financial

5    transactions involving the proceeds of specified unlawful

6    activity, or, in other words, criminal proceeds; that she

7    did so with knowledge that the funds were criminal proceeds;

8    and that she did so with the intent to conceal or disguise

9    the nature, location, source, ownership or control of those

10   proceeds or assets.

11           THE COURT:  Mr. Ross, do you disagree in any

12   respect with that summary as to the essential elements?

13           MR. ROSS:  No, I don't.

14           THE COURT:  Ms. Barnes, do you understand that if

15   there were a trial on the charge, the United States would be

16   required to present evidence sufficient to prove each of

17   these essential elements beyond a reasonable doubt?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  Ms. Barnes, the plea agreement

20   includes a written summary of facts specifically beginning

21   at paragraph eight on page three and continuing on to page

22   five.

23           Have you read carefully through that statement of

24   facts?

25           THE DEFENDANT:  I have read it once, sir.

1        THE COURT:  When you read it and after you had a

2  chance to reflect upon it, are those facts all true in every

3  respect?

4        THE DEFENDANT:  I didn't know some of the details

5  of it.  That is in relation to the mistake that the --

6        THE COURT:  Well, Ms. Barnes, let's go through

7  this, then, paragraph by paragraph.

8        On page three, paragraph eight, the paragraph

9  that begins "Defendant was a real estate agent."  Did you --

10  do you see that?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  Are the facts contained in paragraph

13  8.a. true and correct.

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  All right.  If -- will you look at

16  paragraph 8.b., that begins "Defendant attempted," and it's

17  at the bottom of page three and it goes on to the top of

18  page four.  Did you read that, Ms. Barnes?

19        THE DEFENDANT:  Yes, Your Honor.

20        THE COURT:  Is what's contained in paragraph 8.b.

21  true and correct.

22        THE DEFENDANT:  Yes, sir.

23        THE COURT:  Will you look at paragraph 8.c. on

24  page four that begins "On or about August 10, 2001."

25        THE DEFENDANT:  Sir, I just have a problem about

1  the false receipt because I didn't notice that.

2          MR. ROSS:  What she's saying, Your Honor, is she

3  did get a receipt but she didn't know it was a false receipt

4  at the time.

5          THE COURT:  No, but, Mr. Ross, without going too

6  much further I think that's --

7          MR. ROSS:  I don't think it really matters to

8  what we're trying to do, though.

9          THE COURT:  I think it does matter insofar as it

10  reflects upon whether or not the Defendant had knowledge of

11  -- that her conduct as being illegal and part of an illegal

12  --

13          MR. ROSS:  She had some knowledge that the money

14  that she told me was from gambling activity which is

15  contraband also.  That much she knew.  She didn't know it

16  was drug money at the time.

17          MR. LOO:  Judge, I don't know if this will help

18  but for the record, the facts contained in paragraph eight

19  regarding the receipts being false, the United States

20  alleges that those receipts are false in this respect:  that

21  they do not reflect payment of money from David Espinal to

22  Sanford Jacobson.

23          That money, for the purchase of the bar, did in

24  fact come from David Espinal.  Receipts were generated and

25  signed showing that payment was received by Jacobson from

1  Hernandez.  That goes to the essential element of

2  concealment which is involved in a money laundering offense.

3          So in that regard, Your Honor, the United States

4  alleges that the receipts were false because they did not

5  show the money coming from David Espinal, and in that

6  regard, I believe the Defendant is aware that although the

7  money was coming from David Espinal the receipts did not

8  reflect that.

9          THE DEFENDANT:  Am I still answering?

10          THE COURT:  Well, here's -- Ms. Barnes, I guess

11  I'd like to go back to the first question which was with

12  regards to the facts contained in paragraph eight, you know.

13  Are those facts true.

14          THE DEFENDANT:  By his explanation, now, to that

15  extent, yes, I understand.

16          THE COURT:  All right, but then what about the

17  balance of what's contained in paragraph eight.  Is there

18  any other fact or representation set out in paragraph eight

19  that you have any question or concern about?

20          THE DEFENDANT:  No, no, Your Honor.

21          THE COURT:  So with the explanation and

22  clarification given by Mr. Loo with regards to the false

23  receipt, all of the other facts contained in paragraph eight

24  are true and accurate to the best of your knowledge?

25          THE DEFENDANT:  It is true, Your Honor.

1          THE COURT:  Ms. Barnes, then, would you tell me

2    in your own words what you did that constitutes the crime

3    charged in Count 1 of the Indictment charged against you in

4    this case.  What did you do?

5          THE DEFENDANT:  I -- may I say that actually this

6    was an accident that happened in my life.  It happened

7    because I was in the wrong place, the wrong time and met the

8    wrong people and associated with them and I have used poor

9    judgment.  I am -- I was the victim of my own vanity.  But I

10   do know that the people involved were involved in some form

11   of criminal activity like gambling.

12         THE COURT:  Okay, but what did you do, though.

13         THE DEFENDANT:  What did I do.  I introduced

14   them.  They sought me because knowing that I was a real

15   estate broker and property manager for the Wailana, that

16   they were interested in, but first was a space to rent I was

17   the listing agent and then later on I was asked to find a

18   bar for them to buy.  So I introduced them to Jacobson.

19         THE COURT:  And what else did you do.

20         THE DEFENDANT:  Well, I guess I act as kind of a

21   middle man or, you know, I participated in the sale although

22   not directly involved in the transaction because I did not

23   have a listing.  I was not given a listing and the seller

24   refused, you know, to give me a listing in writing in fact

25   because I didn't know how -- he said I wouldn't know how to

1  put a construction like that like the purchase of a bar and

2  I never sold a bar before but I did continue, you know, to

3  assist those people to do what they need to do in order to

4  buy Spinners.

5          THE COURT:  Mr. Loo, based on what the

6  Defendant's telling me, I cannot accept this guilty plea.

7          MR. LOO:  Well, Judge, we're set for trial

8  December 12th.  I don't know if Mr. Ross needs more time to

9  speak to his client or -- I don't know, Judge.  I mean --

10         THE COURT:  Mr. Ross?

11         MR. ROSS:  Well, she delivered some of the money

12  and saw the transaction through to help it get completed so

13  she was concealing money, of the identity of the real person

14  that was hiding the money.  That's what she facilitated.

15         THE DEFENDANT:  Yes.

16         MR. ROSS:  I think that's what she's trying to

17  tell you.

18         THE COURT:  Well, my thought, then, Mr. Ross, is

19  we've been going now for about forty minutes.  So maybe we

20  should take a break and you and Ms. Barnes can have some

21  time to review the plea agreement and we can reconvene if

22  it's appropriate.

23         MR. ROSS:  Five minutes will be enough, sir.

24         THE COURT:  All right.  Thank you very much.

25         (RECESS)

1          THE CLERK:  This Honorable Court is now in

2    session.  Criminal number 05-367 DAE, *United States of*

3    *America vs. Defendant 1 Maria Barnes*.  This case has been

4    called for a Motion for Withdrawal of Not Guilty Plea and to

5    Plead Anew.

6          MR. LOO:  Good afternoon, Your Honor.  Jonathan

7    Loo for the United States.

8          THE COURT:  Good afternoon.

9          MR. ROSS:  Good afternoon, again, Your Honor.

10    Art Ross present with Maria Barnes.

11          THE DEFENDANT:  Good afternoon, sir.

12          THE COURT:  Ms. Barnes?  First, let me ask you do

13    you wish to change any of the answers that you've given me

14    up to this point in time?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Okay.  What answer would you like to

17    change.

18          THE DEFENDANT:  That I am guilty because I

19    facilitated the sale of the bar to these people and I also

20    abetted in hiding their real identity and the source of the

21    funds.

22          THE COURT:  Okay.  Ms. Barnes, I'm going to ask

23    Mr. Loo to make what's called a proffer of what he would

24    prove if the case were to go to trial and what he would be

25    able to prove against you.

1          What I want you to do is to listen to what he

2    tells me because when he's through, I'm going to ask you

3    whether you've heard what he said and whether what he said

4    about you and your conduct is true.  Okay?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Mr. Loo, what's the Government's

7    proffer?

8          MR. LOO:  Your Honor, had this case proceeded to

9    trial, the United States is prepared to prove the following

10   beyond a reasonable doubt.

11         That the Defendant was a real estate agent

12   engaged in business in the State of Hawaii.  At some point

13   she became acquainted with David Espinal.

14         David Espinal, as it turned out, was a large

15   scale crystal methamphetamine dealer.

16         In the course of her relationship with David

17   Espinal, she became involved in a transaction whereby David

18   Espinal expressed his desire to purchase a bar in the

19   District of Hawaii, and that bar turned out to be Spinners,

20   a bar located on Kuhio Avenue in Waikiki.

21         And this Defendant in essence acted as an agent

22   of Mr. Espinal for purposes of locating a bar for him to

23   find and then engaging in some dealings with the seller.

24   The seller was co-defendant in this case Sanford Jacobson.

25         At some point an agreement was reached whereby

the bar would be sold from Mr. Jacobson to Mr. Espinal for a purchase price of three hundred thousand dollars. And it was also agreed that the Defendant would receive some sort of commission for her participation in making that transaction work.

And so, in essence, what happened with the sale and purchase of Spinners is that David Espinal found nominees to act on his behalf, in whose name the transaction would take place and in whose name title would be passed on the bar. Those individuals were David Hernandez and Robert Cruz (phonetic).

And in fact, at some point, during the course of this transaction for the purchase and sale of the bar, Cruz and Hernandez formed a corporation in the State of Hawaii called D.D.R. Corporation for the purpose of engaging in this transaction.

Payment for the bar took place basically in three installments -- there were three one hundred thousand dollar cash payments which went from Espinal to Jacobson. The Defendant, who was involved personally in at least one of these installment payments to the extent that she received the hundred thousand dollars in currency from David Espinal and took it to Sanford Jacobson as payment for the bar, and was also involved in making sure -- at least on that occasion -- that a receipt showing payment to Jacobson from

1  David Hernandez was executed, and she took the receipt and

2  returned it to David Espinal so that Espinal had some record

3  of the payment actually being received by Jacobson.

4          There were also two other installment payments of

5  a hundred thousand dollars each and on at least one other

6  occasion, this Defendant received a copy of the receipt

7  showing payment from David Hernandez to Sanford Jacobson in

8  the amount of one hundred thousand dollars.

9          In addition, Your Honor, the United States is

10  prepared to prove through the testimony of cooperating

11  defendants such as Sanford Jacobson and David Espinal that

12  this Defendant was aware that David Espinal's money was the

13  proceeds of some criminal activity.

14          At one point, she was told that Mr. Espinal was

15  in fact a felon and it had been represented to her at one

16  point during the course of the conspiracy that Mr. Espinal's

17  proceeds were the result of gambling activity.  That

18  representation changed over time.

19          Once this transaction took place and in fact the

20  Government became aware of it and investigated it, the

21  Government then engaged in an undercover operation against

22  this Defendant and another co-defendant George Callender.

23          That was -- that part of the investigation

24  involved an undercover agent who was introduced to this

25  Defendant.  And that undercover agent represented himself to

1    be a representative of David Espinal and to be in possession

2    of Espinal's drug proceeds.  And I believe by this time in

3    2003, Mr. Espinal had already been arrested on drug charges.

4         A series of undercover meetings and recorded

5    conversations take place between the undercover agent, this

6    Defendant and George Callender.  And during the course of

7    those undercover meetings, the undercover agent says to this

8    Defendant, in essence, I'm David's representative.  I still

9    have some of David's drug money.  It is drug money and you

10   know it's drug money.  If I -- and I'm saying this to you

11   because I know that you already know, otherwise I wouldn't

12   be this open with you.  And the Defendant acknowledges that.

13        At that point, the Government's assertion is

14   obviously that she becomes aware that David Espinal's money

15   is now drug proceeds.

16        What happens thereafter is a series of fifty

17   thousand dollar transactions whereby the undercover provides

18   money purported to be David Espinal's drug money to this

19   Defendant and George Callender and they are to exchange it

20   for cashier's checks and money orders.  And they in fact do

21   this on three occasions in 2003.

22        And in fact, the Defendant and George Callender

23   negotiate for and receive an eight percent commission to be

24   split equally between the two of them for laundering what is

25   purported to be drug proceeds.

1           And so they do this on three occasions totaling a

2    hundred and fifty thousand dollars.  And on each occasion,

3    four thousand dollars is paid to Mr. Callender and the

4    Defendant as a commission.  So every time a fifty thousand

5    dollar transaction takes place there's a four thousand

6    dollar commission paid.

7           And obviously during the course of the

8    transactions, there are further conversations between the

9    undercover and this Defendant wherein she speaks about her

10   prior relationship with David Espinal.

11          THE COURT:  Ms. Barnes, did you hear what Mr. Loo

12   just told me?

13          THE DEFENDANT:  Yes, sir.  It's very clear.

14          THE COURT:  Is what he said about you and your

15   conduct true?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Are you satisfied, Mr. Loo?

18          MR. LOO:  Yes, Your Honor.

19          THE COURT:  Ms. Barnes, if you plead guilty, the

20   Court will order that a pre-sentence report be prepared.

21   The sentencing judge will decide whether or not to accept

22   the plea agreement based in part upon the contents of the

23   pre-sentence report.

24          If the Court decides to reject the plea

25   agreement, you will then have an opportunity to withdraw

1  your guilty plea and change it to not guilty.

2          Do you understand that?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  All right, then, Ms. Barnes, how do

5  you plead to the charge contained -- or the charge in Count

6  1 of the Indictment filed on September 8, 2005; guilty or

7  not guilty?

8          THE DEFENDANT:  I am guilty.

9          THE COURT:  Mr. Ross, are you aware of any reason

10 why the Court should not accept the Defendant's guilty plea?

11         MR. ROSS:  No, I'm not, Your Honor.

12         THE COURT:  The Court finds that the Defendant is

13 fully competent and capable of entering an informed plea;

14 that her plea of guilty is knowing and voluntary and

15 supported by an independent basis in fact containing each of

16 the essential elements of the offense.

17         I am therefore signing the Report and

18 Recommendation Concerning Plea of Guilty.  Subject to the

19 Court's consideration of the plea agreement pursuant to Rule

20 11(c)(3) of the Federal Rules of Criminal Procedure, I

21 recommend that the Defendant be adjudged guilty and have

22 sentence imposed.

23         Objections to this Report and Recommendation are

24 waived unless filed and served within ten days.

25         Ms. Barnes, I'm ordering our Probation Department

1  to prepare a pre-sentence report in this case.  This is a

2  document about you and your case which will assist the judge

3  in determining your sentence.

4        The Probation Officer will interview you.  If you

5  wish, your attorney may be present at that interview.  You

6  and your attorney will have an opportunity to read the

7  report before sentencing and to file any written objections

8  to its contents.

9        You and your attorney will also have the

10 opportunity to address the judge at the hearing before the

11 judge imposes sentence.

12       Date and time?

13       THE CLERK:  Sentencing to Count 1 of the

14 Indictment March 27, 2007, 3:00 p.m., Judge Ezra.

15       MR. ROSS:  Is that a sentencing date?

16       THE COURT:  Yes.

17       MR. ROSS:  March 27th?

18       THE COURT:  Yes.

19       MR. ROSS:  2007.

20       THE COURT:  Yes.  May the Defendant remain at

21 liberty on the conditions previously set unless and until

22 the Court orders otherwise?

23       MR. LOO:  Yes, Your Honor.

24       THE COURT:  The Court -- the Defendant, then,

25 shall remain at liberty on the conditions previously set

1   unless and until the Court orders otherwise.

2           Anything further, Mr. Loo?

3           MR. LOO:  No, Your Honor.

4           THE COURT:  Mr. Ross.

5           MR. ROSS:  No, thank you, Your Honor.

6           THE COURT:  Good luck, Ms. Barnes.

7           THE DEFENDANT:  Thank you, Your Honor.

8           THE COURT:  We'll be in recess.

9           (Proceeding concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                   C E R T I F I C A T E

2           I, Larraine Sinclair, do hereby certify that the

3    foregoing is a true and correct transcription, to the best

4    of my ability, of an audio compact disc of the proceedings

5    in the foregoing matter.

6           I further certify that I am not counsel for any of

7    the parties hereto nor in any way interested in the outcome

8    of the cause named in the caption.

9

10                          _____
                                   Larraine Sinclair
11

12   DATED:   June  26 , 2008

13

14

15

16

17

18

19

20

21

22

23

24

25
```